BION W. BICKFORD vs. AETNA INSURANCE COMPANY.

Cumberland.     Opinion January 5, 1906.

*Fire Insurance Contract.     Construction.     Renewal of Policy.     Frame Building and " Addition."*

An insurance contract should, in cases of ambiguity, be construed most favorably to the insured, and the language of the contract, if ambiguous, is to be interpreted in the light of attendant circumstances and the intent of the parties.

Unless otherwise expressed, a renewal of a policy of insurance though a new contract will be construed to be subject to the terms and conditions contained in the original policy.

Personal property, consisting of hay, carriages and sleighs was insured under a policy and described as contained in " the frame building and addition situated on Depot Street, in Gorham, Maine, and occupied as a livery and sale stable." The property lost was sleighs and carriages contained in the building destroyed which was forty-six feet long by thirty-seven feet wide, and connected with the larger main building by a platform twenty-four feet wide and twenty-six feet by the sides of the buildings, and supported by posts and reached by a runway and from which doors opened into each building, and erected at the same time as the buildings and constantly used in connection with them. The building destroyed was used by the insured on its second and third floors for storing carriages and sleighs and for occasional sales, the other part being used for different purposes. There was no other structure to which the term "addition" by adaptation or use could apply ; and also when the original policy was issued the agent of the insurance company understood that some of the property intended to be insured was contained in the in the building destroyed. *Held:* that the building destroyed was the "addition" mentioned in the policy.

On report.   Judgment for plaintiff.

Assumpsit upon a fire insurance policy of the standard form issued to the plaintiff by the defendant company, to recover for loss of hay, sleighs and carriages by accidental fire.   This policy was a renewal of the original policy issued by the defendant company through one of its agents, Col. Henry R. Millett, and this renewed policy was

issued through Col. Millett's successor as agent of the defendant company. Plea, the general issue. Tried at the April term, 1904, of the Supreme Judicial Court, Cumberland County. At the conclusion of the testimony "and in accordance with the written stipulations of the parties" the case was reported "for the determination of the Law Court."

In relation to the "compulsory arbitration" clause contained in the policy, the averments in the plaintiff's writ and declaration are as follows: "And the plaintiff further avers that there is a provision in said policy which is as follows, to wit: 'In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference unless waived by the parties shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as referee, against the objection of either party, who has acted in a like capacity within four months.'

"And the plaintiff further avers that, pursuant to said provision, he endeavored to have his loss determined by three disinterested men, and for that purpose, on the twenty-fourth day of December, A. D. 1903, submitted to said defendant company the names of three persons, all living in said Gorham, to wit, Harry W. Wilshire, Harry Day and Frank F. Johnson, one of whom said company could choose as one of the referees, and requested said company to submit to him the names of three persons, one of whom he would choose, and the two so chosen to choose the third, and that said defendant company utterly refused so to do and thereby prevented the plaintiff from having his loss or damage determined in accordance with said provision."

The case is stated in the opinion.

*William Lyons*, for plaintiff.

*Robert Treat Whitehouse*, for defendant.

SITTING : WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

PEABODY, J.    This case was an action of assumpsit brought upon an insurance policy to recover for loss of hay, sleighs and carriages by an accidental fire.

The plea is the general issue and the case is before the law court on report by agreement and upon written stipulations of the parties according to which the sole question submitted is "whether or not the building wholly destroyed which it is admitted contained the carriages and sleighs for which the plaintiff seeks to recover was covered and included by the terms of the description of the policy in question, namely: "the frame building and addition situated on Depot Street in Gorham, Maine, and occupied as a livery and sale-stable." If this building is covered by the terms of the description of the policy the plaintiff is entitled to recover for the loss of his sleighs and carriages the sum of $485, and the sum of $60 which is the admitted damage to the hay contained in the livery stable, if not he can recover only for the loss of the hay.

The plaintiff invokes the application of the familiar rule that an insurance contract should be in cases of ambiguity construed most favorably to the insured.    *Herrman* v. *Merchants Ins. Co.*, 81 N. Y. 184 ; *Allen et al.* v. *St. Louis Ins. Co.*, 85 N. Y. 473 ; *Rann et al. exrs.* v. *The Home Ins. Co.*, 59 N. Y. 387 ; *Hoffman* v. *Aetna Fire Ins. Co.*, 32 N. Y. 405 ; 1 May on Ins., (3rd. Ed.) sec. 175.    The plaintiff claims that there are three reasons supporting his contention in the case under consideration: first, that the building which was wholly destroyed was in connection with the larger building "used as a livery and sale stable," storing sleighs for sale being a part of the business ; second, that it was the "addition" mentioned in the policy; and third, that it was understood by himself and the agent of the company when the first policy and its renewal were issued that the required indemity was in reference to property in this building.

It is necessary to look beyond the policy to ascertain whether in the use made by the plaintiff the building destroyed was a part of

his livery and sale stable. It could be so considered only because its second floor was used by him for storing carriages preparatory to painting, and subsequently for permanent storage as a portion of the main stable was used, and its third floor was used by him for storing sleighs kept for sale, and because occasionally sales of carriages and sleighs were made by him in the building. The evidence shows that at the time of the fire, March 27, 1903, the lower floor of the smaller building was used by other parties as a harness shop and paint shop and one of the rooms of the second floor was reserved by the plaintiff for painting carriages and the third floor wholly used by him for storing sleighs and that he occasionally made sales of these carriages and sleighs in the building.

It may be doubted whether the language " used as livery and sale stable" included with the main building another twenty-six feet distant used in part as a repair shop and in part a paint shop, though also used for the storage of sleighs by the proprietor, and as the place of an occasional sale of his carriages and sleighs.

It is important to examine further the descriptive word "addition" used in the policy to which the occupation of the plaintiff as a livery and sale stable applies as aptly as to the main frame building. The contract of insurance does not cover the buildings themselves but their contents, and so the ownership of the buildings is immaterial except in their identification as those in which the personal property insured is contained. We are to interpret the terms of the contract to determine whether the addition mentioned is " the building wholly destroyed." The buildings containing the property insured by the policy in suit are not different from those existing when the original policy was issued. If the word " addition " had reference to any existing structure it must be either the building in question or a small building attached to the main building not containing or adapted to contain any of the property insured and which was never used for the purposes of a livery and sale stable. This small annex was of such size, structure and character as to be a component part of the main building and had it contained any of the classes of personal property described in the policy it would have been covered even in the absence of the term "addition."

The building in question was forty-six feet long by thirty-seven feet wide connected with the main building which was eighty-six and one-half feet long and fifty-four and one-half feet wide by a platform twenty-four feet wide and twenty-six feet by the sides of the buildings. The platform was supported by posts and was reached by a runway nearest the building destroyed. Doors opened into each building both under the platform and from it. It was built at the same time as the buildings, and has since been constantly used in connection therewith. The only way of access to the second and third stories of the building destroyed and to a part of the second story of the main building was from the platform.

The word "addition" must have been a generality or amplified description employed without any definite application or have been intended by the plaintiff and the agent of the underwriters to be within the contract and to mean the building in question, unless its definition and interpretation in the light of surrounding circumstances defeat such intention. The definitions given in dictionaries afford very little assistance in determining its application to a particular structure. The meaning of the term must be extended or limited by reference to other words of description and by the use and purpose contemplated by the parties to the contract not inconsistent with the language of the policy, and by judicial definitions given in similar cases. Generally a building entirely distinct from a larger will not be covered by a policy insuring a "building and addition." In *Rickerson* v. *German-American Ins. Co.*, 32 N. Y. Supp. 1026, it was held that a policy on "the brick building and additions" where on the front of the lot was a three story brick building on the east side a two story extension and in the rear a five story brick factory building, and there was a space between the rear wall of the extension and the front wall of the rear building of about seven feet filled in by a small frame structure on which boards were nailed to form the front and roof, did not include the rear building as an addition to the front building. 1t was held in *Peoria Sugar Refining Co.* v. *People's Fire Ins. Co.*, 52 Conn. 581, that within the meaning of an insurance policy giving the insured authority to make additions a new warehouse located forty feet away from the main building and con-

nected with it by a bridge and underground passage used for pipes, is not an addition. In *Cargill* v. *Millers & Manufacturers Mut. Ins. Co.*, 33 Minn. 90, under a policy insuring a steam power elevator building and addition with porches and platforms attached a warehouse two and one-half feet from the elevator and about the same size, fastened to it with strips of board nailed to each building, used for storing grain received into the elevator was held in effect to be a bin of the elevator building and covered by the policy. In *Marsh* v. *Concord Mut. F. Ins. Co.*, 71 N. H. 253, a fire policy on a frame mill building and all additions thereto attached, which building was occupied by the insured as a pail shop, was construed to cover a dry-house twelve feet from the main building between which and the dry-house was a movable bridge, there being no other building beside these except a boiler house two feet from the dry-house. In *Home Mut. Ins. Co.* v. *Rowe*, 71 Wis. 33, an insurance policy covered a "planing-mill building and additions and machinery therein." The engine room from which the motive power of the mill was furnished was situated twenty-two feet from the mill building, connected therewith by a shaft for the transmission of power, and a spout through which shavings were forced to the engine room. A roadway passed between the buildings. It was held that the word addition covered the engine room and engine. *Blake* v. *Exchange Mut. Ins. Co.*, 12 Gray, 265; *Liebenstein* v. *The Baltic Fire Ins. Co.*, 45 Ill. 301; *Robinson* v. *Pennsylvania Ins. Co.*, 87 Maine, 399.

This question is not free from doubt in the light of the authorities cited, but upon the facts which appear in evidence of the use which the insured made of the building destroyed in connection with his livery and sale stable business, and the fact that no other structure by its location or use can be intended by the terms of the policy, under the rule of construction which in cases of doubt favors the insured, we hold that the building destroyed was the addition designated in the contract.

The evidence shows that at the time the original policy was issued, Col. Millett, the agent of the underwriters, understood that some of the property covered by the policy was in the small building, now claimed to be the addition referred to in the policy though this under-

standing was not known to his successor, Mr. Carl, nor did he personally know that any of the classes of property specified in the policy was contained in this building. The interpretation of the contract is aided by the intent of the parties and the plaintiff is entitled to the benefit of the understanding when the first policy was issued in construing the new contract under a renewal. *Day* v. *Dwelling House Ins. Co.*, 81 Maine, 244; *Philbrook* v. *N. E. Fire Ins. Co.*, 37 Maine, 137. Unless otherwise expressed a renewal will be construed to be subject to the terms and conditions contained in the original policy. *Day* v. *Mut. Ben. L. Ins. Co.*, 1 MacArthur (D. C.) 41; *Hartford F. Ins. Co.* v. *Walsh*, 54 Ill. 164; *Witherell* v. *Maine Ins. Co.*, 49 Maine, 200; *Aurora F. & M. Ins. Co.* v. *Kranich*, 36 Mich. 288.

It is claimed by the defendant that the policy in suit could not be understood to cover property in the building consumed, because the rate of insurance on that building established by the New England Insurance Exchange, was higher than upon the main building; but this fact was not known to the insured and could not effect his rights.

*Judgment for plaintiff for $545.*