## CONTINENTAL CASUALTY COMPANY V. LILLIE JENNINGS ET AL.

### Decided January 12, 1907.

**1.—Accident Insurance—Pleading—Forfeiture Clauses.**

In a suit upon an accident insurance policy, wherein by certain clauses the company was exempted from liability in certain contingencies, it was not necessary for plaintiff to set out such clauses and deny the occurrence of the contingencies. This was matter of defense to be pleaded by defendant.

**2.—Nonpayment of Premiums—Forfeiture—Waiver.**

Where by the terms of an insurance policy the company has the right to declare the policy forfeited for nonpayment of the premiums but fails to do so, and afterwards accepts past due premiums, such acceptance is a waiver of the right to forfeit. Evidence considered, and held to show a waiver of the right to forfeit under the policy.

**3.—Voluntary Exposure to Danger.**

The policy of insurance provided that the amount of insurance should be scaled if injury resulted from voluntary exposure by the insured to unnecessary and obvious dangers. The death of the insured was caused by falling from a tree while gathering pecans. Whether or not the insured was violating the terms of the policy, or was acting as a man of ordinary prudence was a question of fact for the jury.

**4.—Notice of Death—Cause of Injury—False Statement.**

The fact that in giving notice of injury and cause of death the beneficiary made a false statement as to the manner and cause of death will not relieve the company from liability if it was responsible under the true facts.

Appeal from the District Court of Lamar County. Tried below before Hon. T. D. Montrose.

*Simpson, Robertson & Simpson,* for appellant.—A petition on an insurance contract should set out the same with certainty and particularity so as to show the grounds upon which plaintiff expects to recover, and should set out the excepted clauses of the policy and especially such clauses which control the amount to be recovered under said insurance contract, and where the same is not done it is bad under general and special exceptions. Phoenix Ins. Co. v. Boren, 83 Texas, 97; 10 Am. and Eng. Enc. of Forms, p. 258, sec. 11, 442; American Accident Co. v. Carson, 36 S. W. Rep., 169.

An executory contract providing that it is not to take effect until said premiums are paid, and that it would lapse and be void during the time such payments were in default, and could only be revived on payment of such defaulted payments from the date that such arrear payments were received, is void and nugatory during the time such payments remained unpaid after their maturity. Coker v. Atlas Acc. Ins. Co., 31 S. W. Rep., 703; German Am. Ins. Co. v. Waters, 10 Texas Civ. App., 366.

There can be no waiver where the act constituting waiver was done under a misapprehension of the true facts and a fortiori when such misapprehension is occasioned by the fraudulent and false statements of the party claiming the benefit of such waiver. German Ac. Ins. Co. v. Waters, 10 Texas Civ. App., 366.

*Moore, Park & Birmingham, Sturgeon & Moore* and *Hodges & Hardison,* for appellees.—The evidence adduced upon the trial of this cause was sufficient to support the judgment rendered thereon. Johnson v. London Guarantee & Acci. Co., 40 Law Rep. Ann., 440-443; United States Mu. Acci. Asso. v. Hubbell, 40 Law Rep. Ann., 453, 56 Ohio St., 516; Fidelity & Cas. Co. v. Chambers, 40 Law Rep. Ann., 434, and cases cited in notes; Gulf, C. & S. F. Ry. v. Wagley, 15 Texas Civ. App., 313; Traders & Travelers Acci. Co. v. Wagley, 20 C. C. A., 588, 74 Fed. Rep., 457; 2 Bacon Ben. So. & Life Ins. (last ed.), sec. 492; 1 Am. and Eng. Ency. of Law, p. 307, note 6 (2d ed.).

The right of forfeiture of the policy of insurance for the failure to pay the premiums on the dates stipulated in the contract was a right belonging to the defendant company, and could be waived or not, at its option. The evidence conclusively establishes the fact that such right of forfeiture was waived by the defendant company, and the court was justified in so finding. Cohen v. Continental Fire Ins. Co., 67 Texas, 327; Hibernia Ins. Co. v. Malevinsky, 6 Texas Civ. App., 86; Knickerbocker L. Ins. Co. v. Norton, 96 U. S., 234; New York Life Ins. Co. v. Smith, 41 S. W. Rep., 693.

RAINEY, Chief Justice.—This suit was brought by Lillie Jennings against the Continental Casualty Company to recover on an accident policy insuring John E. Jennings, her deceased husband, against accident. Lillie Jennings subsequently married J. M. Brown, who joins her herein. In her petition she sets out that on July 14, 1904, John E. Jennings was a line repairer in the employment of the Cane Belt Railroad Company and on said day upon his written application and in consideration of the payment of premiums, and of certain warranties, covenants and agreements contained in said application, and in the

paymaster's order accompanying the same, said company issued its policy of insurance, conditioned, to pay Lillie Jennings the sum of $2,000 in the event said John E. Jennings should receive personal bodily injuries that resulted in death, within 90 days thereafter. That on October 23, 1904, said John E. Jennings, while gathering pecans fell from a tree to the ground, receiving injuries from which he died on November 4, 1904, of which injuries and death the company was duly notified according to the terms of said policy.

J. C. and M. E. Jennings intervened, claiming an assignment of the policy to them. J. C. Clark intervenes claiming an assignment to him of so much of the policy as necessary to satisfy a certain note made by plaintiff for $300 to him.

Defendant answered by general and special demurrers, general denial and that said policy had been forfeited by the failure to pay premiums, and that said accident was caused from the intentional act of the deceased and said recovery should be scaled on that account to the sum of $250; or that it resulted from the voluntary exposure to unnecessary danger, for which the recovery should be scaled to one-fourth of the amount, $500, or that the risk was obvious, for which the recovery should be scaled to $500.

The case was tried by the court without a jury and judgment rendered for the plaintiffs and intervenors for $2,104.90, which was apportioned between the parties as their interest appeared and of which they do not complain. Defendant alone prosecutes this appeal.

The trial court filed its conclusions of fact and law. The conclusions of fact are found to be correct by this court, and are as follows:

"1. That on July 14, 1904, the defendant Continental Casualty Company, upon the written application of John E. Jennings, issued to said Jennings accident insurance policy number 801,304, whereby, in consideration of the warranties and agreements contained in said application and the payment of the premiums therein provided, it insured the life of the said John E. Jennings, by occupation a line repairer, in the principal sum of $2,000, with weekly indemnity of ten dollars, subject to certain conditions in said policy specified; and so far as applicable to this controversy, hereinafter set out, and thereby promised to pay to the insured or to his beneficiary, Lillie Jennings (now Lillie Brown), his wife, indemnity as therein scheduled, in the event that said insured, while said policy was in force, should receive personal bodily injury through external, violent and purely accidental means, which caused at once total and continuous inability to engage in any labor or occupation or for loss of life, by such accidental means, the full sum of said policy was to be paid to the beneficiary, Lillie Jennings, now Lillie Brown.

"2. Said policy contained, among others, the following provisions: Where the accidental injury results from the intentional act of the insured, or of some other person, while the insured is not engaged in his occupation, then the company shall only be held liable for the payment of one-eighth of what would otherwise be payable under said policy. Also that where the accidental injury results from the voluntary exposure of the insured to unnecessary danger, or obvious risk of

injury, then the company shall be liable for only one-fourth of what would otherwise be payable under said policy.

"3. By the terms of said application the insured was to pay the sum of $30 in premiums, and gave therefor, which was accepted by the defendant company, a paymaster's order on the Cane Belt Railroad Company, for whom he was then working, which stipulated that said premium was to be paid in four installments of $7.50 each, payable as follows: $7.50 from the insured's wages for the month of August, 1904; $7.50 from wages for the month of September, 1904; $7.50 from wages for October, 1904; $7.50 from wages of November, 1904. The amount to be paid from the wages of each particular month was to be paid some time during the next succeeding month, according to the custom of the railroad company for which Jennings was working (the Cane Belt Railroad Company). Said policy contained the further stipulation that the paymaster was to be the agent of the insured and that a failure to pay the premiums as per agreement should operate to forfeit all rights of the insured under the terms of the policy.

"4. At the time Jennings made his said application for insurance and gave the paymaster's order as above mentioned, he was in the employ of the Cane Belt Railroad Company, in the State of Texas, working in the capacity of line repairer; and continued in such employ till the date of his injury, October 23, 1904; and was receiving for his services a salary of $60 per month. That on the above mentioned date the insured, John E. Jennings, sustained accidental injuries within the meaning of said policy of insurance, while engaged in gathering pecans, by falling from a pecan tree, from which injuries he died on the 4th day of November, 1904. That thereafter, to wit, on December 3, 1904, the defendant company received proof of the death of the said John E. Jennings in proper form on one of the blanks furnished by defendant for that purpose, but has failed and refused to pay the amount of said policy, or any part thereof.

"5. That at the time of the accident and at the time of the death of John E. Jennings, said policy of insurance had not been forfeited for the nonpayment of premiums and was in full force and effect; that while the premiums had not been paid in strict accordance with the terms of the original agreement between the insured and the defendant, yet the defendant had waived a forfeiture of the policy for such nonpayment of premiums, and made another and different contract about the payment of premiums, which contract was complied with in all respects by the insured and his beneficiary.

"6. That at the time Jennings fell from the pecan tree, he was acting as a person of ordinary prudence would have acted under the same or similar circumstances. That his injuries were not the result of a voluntary exposure to unnecessary danger, or an obvious risk of injury, within the meaning of the policy of insurance, nor did they result from the intentional act of the insured, or any other person within the meaning of said policy.

"7. That at the time of the application for and the issuance of said policy of insurance to John E. Jennings, the plaintiff, Lillie Brown, then Lillie Jennings, was the wife of the said John E. Jennings, and was

named as the sole beneficiary in said policy in case of death of the insured, and that she was such beneficiary at the time of the death of the insured. That after the death of her said husband and after the institution of this suit she married her coplaintiff, J. M. Brown, who is now joined with her in this suit.

"8. That plaintiff Lillie Jennings, now Lillie Brown, prior to the rendition of judgment in this cause assigned to intervener L. C. Clark a $323.75 interest in said policy, and to interveners J. C. and M. E. Jennings all the remainder thereof except $400."

*Opinion.*—The overruling of the general demurrer and special exceptions to plaintiff's petition is the basis for several assignments of error. The petition sets out a substantial cause of action against the defendant upon the contract of insurance against death by accident, and pleads the contract sufficiently to show liability on the part of defendant. It does not plead the clauses of the policy which limit or reduce the liability of defendant, or the conditions which exempt the defendant from any liability. But does plead that the terms and conditions of the policy had been complied with. The failure to plead the clauses and conditions that limited or exempted that asserted liability constitute the ground for the demurrers.

We are of the opinion that the petition having alleged the contract with substantial particularity to show liability for death by accident it was not incumbent upon plaintiff to set forth the clauses of the contract, which, if breached, would limit or exempt the defendant from liability. If any of said clauses had been breached it was a matter of defense to be pleaded by defendant. (Burlington Ins. Co. v. Rivers, 9 Texas Civ. App., 181; Hartford Ins. Co. v. Watt, 39 S. W. Rep., 200.) These authorities are in point, and accord with our views. In the last case a writ of error was denied by our Supreme Court, which confirms us in our convictions; therefore said assignments are not sustained.

It is contended by appellant that at the time of the accident and death of Jennings the policy had been forfeited by the nonpayment of the premium. We do not assent to this contention. The facts show that Jennings applied to the appellant for insurance on July 14, 1904, was accepted and the policy sued on was issued. He contracted to pay $30 as premiums, to be paid in installments of $7.50 each. To make these payments Jennings gave to the defendant company an order on the paymaster of the Cane Belt Railroad Company, for which he was at the time working, in the capacity of a line repairer. The installments were to be paid as follows: The first out of his August wages, the second out of his September wages, the third out of his October wages and the fourth out of his November wages. It was further stipulated that, at the option of the defendant company deductions might be made to pay any installment, payment of which had been defaulted from any reason whatever, from Jennings' wages from any month thereafter. It was the custom of the Cane Belt to pay the wages due its employes for any month a few days after the first of the next succeeding month. The railway company advised the insurance company on or about the 6th day of October, 1904, that deductions for August and September had not been made out of the wages of Jennings by reason of an oversight;

but also advised the company that deductions to cover these payments would be made out of Jennings' October wages, Jennings still being in their employ, and the paymaster's order being still in the hands of the railroad company. On October 6, 1904, Jennings wrote to the defendant company at its home office in Chicago, calling attention to the fact that no deductions had been made from his wages, and asking that he be released from the payments on acount of sickness in his family, and that his policy of insurance be cancelled. This letter was referred to G. W. Donaldson, general agent for the company, headquarters at Dallas, Texas. On October 18, Donaldson replied to this letter, and said: "I note that your accident policy is dated July 14, and that although no payment on the premium has been made, same has not been lapsed out, for the reason that we were advised by the railway company that through an error on their part the deductions had not been made from your wages. We were advised that the deductions would be made from your October earnings. On this account you have enjoyed full protection of the benefits provided by your policy and it would not be consistent to cancel same as you request. Should the first and second installments be paid from your October wages, I expect we could arrange an extension of thirty days each on the third and fourth installments if this would assist you." On the following day Jennings replied to this stating that he would strain a point to remit $7.50 out of his October wages, and would try to remit as much as possible each month until the policy was paid out in full, and requesting Donaldson to ask the Cane Belt Railroad Company to reduce the bill to $7.50 and send bill for that sum for each month, if that would be satisfactory. On October 20, 1904, Donaldson on the part of the defendant company, replying to this last letter stated: "It is not expected that the Cane Belt Company will deduct the whole of your premium from your October wages; however, as you have been insured under our policy since its date, July 14, it would only be reasonable that the first and second installments should be paid from your earnings for that month, and I presume these amounts will be collected. If so, and it would assist you, we will try to get them to extend the third and fourth installments each thirty days, skipping any collection from your November wages, and making the last two from your December and January wages." At the time of this correspondence the Cane Belt Company was indebted to Jennings in excess of the sum of $15. On the 23d day of October Jennings received the injuries from which he died on the 4th day of November following. The Cane Belt Railroad deducted out of the wages due Jennings for October the sum of $15, which was paid over to the defendant company after the death of Jennings and is still retained by it.

The company held the paymaster's order for the payment of the premium and by the terms of the policy could have declared the policy void, but it did not do so. There was no stipulation in the policy that over due premiums should be considered as earned. In Cohen v. Continental Ins. Co., 67 Texas, 327, our Supreme Court say: "It may be considered as the settled law that when a policy provides for a forfeiture upon failure to pay premiums which are to fall due, but does not stipulate that the over due premiums shall be considered as earned, a demand and payment of such premiums constitute a waiver." (Hibernia

Ins. Co. v. Malevinsky, 6 Texas Civ. App., 86; New York Life Ins. Co. v. Smith, 41 S. W. Rep., 680; Knickerbocker Ins. Co. v. Norton, 96 U. S., 234.)

It was optional with the company to declare the policy forfeited, but having failed to do so and received the premiums, it is in no attitude to now do so.

It is further insisted by appellant that plaintiff was not entitled to recover, because the injury resulted from the voluntary exposure by the insured to unnecessary and obvious danger within the meaning of the policy. The evidence showed that insured was, when he received the injury that resulted in his death, up a pecan tree, standing on the limb of said tree, about 50 feet from the ground, in the act of thrashing pecans with a pole in hand, nine feet long, when he stepped out on said limb, after being warned by his wife not to go out on that limb. He answered her that he had been climbing trees and poles for 30 years, and was not afraid. He ventured out and fell. This was a question of fact to be passed upon by the court as a jury and the court found that the deceased "was acting as a man of ordinary prudence, and his injuries were not the result of a voluntary exposure to unnecessary danger, or an obvious risk of injury." The court having so found we will not disturb the finding, as it was warranted by the evidence. (Johnson v. London G. & Acci. Co., 40 Law Rep. Ann., 440; Gulf, C. & S. F. Ry. Co. v. Wagley, 15 Texas Civ. App., 313; United States Mut. Acci. Assn. v. Hubbell, 40 Law Rep. Ann., 450.)

It is contended no recovery could be had because notice of injury and proof of death were not given as required by the terms of the policy, in that the notice and proof given were false in stating that at the time of injury deceased was engaged in taking the cross out of wire, when in truth he was gathering pecans. Conceding that the statements in the notice of injury as to what work deceased was engaged in at the time of injury were false, we do not see that defendant's liability was affected thereby. It had notice that the injury had occurred and that death resulted therefrom, and if it was responsible under the true facts the mis-statement did not relieve it.

The evidence we think is sufficient to support the verdict and the judgment is affirmed.

*Affirmed.*